UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MYBUSINESS LOAN.COM, LLC d/b/a DEALSTRUCK,

Plaintiff,

v.

BRUCE M. LINSTAD,

Defendants.

Case No.

# COMPLAINT

Plaintiff, MYBUSINESS LOAN.COM, LLC d/b/a DEALSTRUCK, hereby sues BRUCE M. LINSTAD and alleges:

## NATURE OF THE ACTION

1. This is a civil action for breach of contract against the borrower and guarantor of a loan and credit line agreement.

## PARTIES

2. MyBusinessLoan.com, LLC ("Lender") is a limited liability company organized and existing under the laws of the State of California and is located at 1901 Camino Vida Roble, Suite 120, Carlsbad, California 92008.

3. Dealstruck, Inc. ("Dealstruck") is a corporation organized and existing under the laws of the State of Delaware with its business address located at 1901 Camino Vida Roble, Suite 120, Carlsbad, California 92008.

4. Dealstruck serves as the manager for Lender.

5. Bruce M. Linstad ("Borrower") conducts business as an individual and as a Massachusetts sole proprietor. Borrower resides at 14 Donna Road, Chelmsford, MA 01824.

6. Mr. Linstad conducts business under the trade names Linstad Plumbing & Heating and BM Linstad Heating & Plumbing.

## JURISDICTION AND VENUE

7. Pursuant to 28 U.S. Code §1332, this Court has original jurisdiction over the subject matter of this action because there is diversity of citizenship between the parties and the matter in controversy exceeds $75,000, exclusive of interests and costs.

8. This court has personal jurisdiction over Borrower because he resides in and is operating, conducting, engaging or carrying on a business in the State of Massachusetts and is engaging in substantial and not isolated activity within the State of Massachusetts.

## GENERAL ALLEGATIONS

9. On or about July 18, 2014, Lender and Borrower entered into loan documents consisting of, among other documents, (1) that certain Loan and Security Agreement attached hereto as Exhibit A ("Loan and Security Agreement"); (2) that certain Note attached hereto as Exhibit B ("Note"); (3) that certain Final Loan Request attached as Exhibit C ("Final Loan Request"); (4) that certain Borrower Agreement attached as Exhibit D ("Borrower Agreement"); (5) that certain Credit Line Master Agreement, attached as Exhibit E (collectively, the "Loan Documents").

10. Pursuant to the Loan and Security Agreement, the Parties acknowledge that Borrower desires to and shall apply for various loans from Lender by making loan requests to Lender.

11. On or about July 18, 2014, Borrower executed the Final Loan Request seeking to borrow the principal sum of $100,000 from Lender. The full amount of the loan was approved by Lender and Borrower's indebtedness is evidence by the Note (the "Loan").

12. The Final Loan Request sets forth the terms of the Loan. Specifically, the Loan was for a term of 52 bi-weeks with an interest rate of 18% per annum. Borrower is obligated to make weekly payments in the amount of $2,296.53. The Loan also had an origination fee of $4,000.00.

13. Section 8 of the Loan and Security Agreement specifically provides that if "Borrower shall fail to pay when due any amount of principal, interest or the Origination Fee hereunder or other amount payable hereunder" such failure "shall constitute an 'Event of Default.'"

14. Section 9 of the Loan and Security Agreement provides that upon the occurrence of an Event of Default, Lender may immediately accelerate and collect on the entire outstanding balance of the Loan:

> Lender may without notice or demand declare the entire unpaid principal amount of the Loans, all interest accrued and unpaid thereon and all other amounts payable hereunder to be forthwith due and payable (*provided that*, upon the occurrence of any Event of Default under **Section 8(e)** or **(f)**, such acceleration shall be automatic), whereupon all unpaid principal of the Loans, all such accrued interest and all such other amounts shall become and be forthwith due and payable, without presentment, demand, protest, notice of protest and non-payment, notice of default, notice of acceleration or intention to accelerate, or further notice of any kind, all of which are hereby expressly waived by Borrower, and exercise any or all of Lender's rights and remedies under the Loan Documents, the UCC and other applicable law.

15. Borrower has ceased making payments on the Loan and is in default of the Loan Documents.

16. The total outstanding balance on the Loan owed to Lender is $75,801.40.

17. Further, Sections 11 and 12 of the Loan and Security Agreement require Borrower to indemnify and reimburse Lender for any and all attorney's fees and other expenses incurred in the collection of the Loan upon an Event of Default.

18. In addition to executing the Loan Documents, Bruce Linstad executed that certain Guaranty dated July 18, 2014, attached hereto as Exhibit F (the "Guaranty").

19. The Guaranty states that "Lender may extend credit to Bruce M. Linstad, a Massachusetts sole proprietor, a/k/a Bruce M. Linstad, Sr. ("Borrower")" and who is "engaged in business using the following trade name(s): Linstad Plumbing & Heating, BM Linstad Heating & Plumbing." The Guaranty further states that "[i]n order to induce Lender to extend credit to Borrower, Guarantor [Mr. Linstad] has agreed to guarantee the indebtedness and other obligations of Borrower to Lender."

20. Accordingly, Mr. Linstad personally guaranteed Borrower's indebtedness under the Loan Documents.

21. Pursuant to Section 13 of the Guaranty "Guarantor agrees to pay on demand all reasonable costs and expenses of Lender and reasonable fees and disbursements of counsel in connection with the enforcement, or preservation of any rights under, this Guaranty."

22. On September 25, 2014, Borrower and Lender executed that certain Amendment to Loan Documents (the "Amendment"), attached hereto as Exhibit G.

23. Pursuant to the Amendment, Borrower and Lender agreed that the July 14, 2014 Credit Line Master Agreement was voided and was replaced by a revised Credit Line Master Agreement (the "Revised Credit Line Master Agreement") also dated July 18, 2014 "in order to accurately reflect the current agreement between Borrower and Lender as it relates to inventory

financing under the Loan." The Revised Credit Line Master Agreement is attached to the Amendment (Ex. G).

24. Pursuant to section 3 of the Revised Credit Line Master Agreement, the parties agreed that Lender would "from time to time, at the request of Borrower, make advances to Borrower so long as before and after such advance, the Obligations do not exceed the lesser of (a) the Maximum Amount, and (b) the Borrowing Base.

25. Further section 3 of the Revised Credit Line Master Agreement states that any "repaid amounts may be re-borrowed" and that "[u]pon the Expiration Date, the unpaid balance of the Obligations shall be due and payable without demand or notice."

26. Under the terms and conditions of the Revised Credit Line Master Agreement (attached to the original Credit Line Master Agreement) "Obligations" is defined as "all present and future obligations owing by Borrower to Lender whether arising hereunder or otherwise, and whether arising before, during or after commencement of any bankruptcy case in which Borrower is a debtor."

27. Borrower has defaulted under the Loan Documents.

28. A balance of $38,635.36 is currently outstanding under the Revised Credit Line Master Agreement.

**COUNT I: BREACH OF CONTRACT AGAINST BORROWER**

29. The allegations contained in paragraphs 1-28 above are hereby re-alleged as if fully set forth herein.

30. Borrower and Lender entered into the Loan Documents, the Amendment, and the Revised Credit Line Master Agreement, pursuant to which Borrower was obligated to repay the

Loan and amounts advanced under the Revised Credit Line Master Agreement pursuant to the terms set forth in the Loan Documents and the Revised Credit Line Master Agreement.

31. Borrower has ceased making the required payments on the Loan and is in default of its obligations.

32. Having defaulted on the Loan, all amounts owed by Borrower to Lender are now immediately due and owing to Lender.

33. Lender has performed each and every one of its obligations under the Loan Documents and the Revised Credit Line Master Agreement and has attempted to collect the monies it is owed from Borrower, who remains in default.

34. Lender has been damaged by Borrower's breach of the Loan Documents and the Revised Credit Line Master Agreement.

**WHEREFORE**, MYBUSINESS LOAN.COM, LLC d/b/a DEALSTRUCK respectfully requests the Court:

A. enter judgment against Borrower for damages, including compensatory damages, attorney's fees and costs;

B. award interest, including pre-judgment interest; and

C. award such other and further relief as the Court deems just and proper.

**COUNT II: BREACH OF CONTRACT/GUARANTY**

35. The allegations contained in paragraphs 1-34 above are hereby re-alleged as if fully set forth herein.

36. Bruce Linstad is personally obligated for all amounts due and owing under the Loan Documents and the Revised Credit Line Master Agreement, as well as under the separately executed Guaranty.

37. Indeed, he is jointly and severally liable with the Borrower named in the Loan Documents and the Revised Credit Line Master Agreement.

38. Borrower is in breach of the Loan Documents thereby causing Lender damage for which Bruce Linstad is liable, as the guarantor, to Lender.

**WHEREFORE,** MYBUSINESS LOAN.COM d/b/a DEALSTRUCK respectfully requests the Court as may be allowed by law:

A. enter judgment against the Guarantor for damages, including compensatory damages, attorney's fees and costs;

B. award interest, including pre-judgment interest; and

c. award such other further relief as the Court deems just and proper.

**JURY TRIAL**

Lender demands a trial by jury on all issues so triable.

Dated: April 30, 2015

PLAINTIFF BY THEIR ATTORNEY,

**/s/ Peter J. Nicosia, Esquire**
**BBO #567627**
**Nicosia & Associates, P.C.**
**PO Box 721**
**259 Middlesex Road,**
**Tyngsboro, Ma 01879**

**T: 978-649-4300**
**F: 978-649-9306**
**E: nicosia@nicosia-associates.com**